IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT A. PETTY,                                    CV 06-734-MA

          Plaintiff,                        OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

         Defendant.

     DAVID LOWRY
     9900 SW Greenburg Road
     Columbia Business Center, Suite 235
     Portland, Oregon  97223

        Attorney for Plaintiff

     KARIN J. IMMERGUT
     United States Attorney
     NEIL J. EVANS
     Assistant United States Attorney
     1000 S.W. Third Avenue, Suite 600
     Portland, OR  97204-2902

     TERRYE E. SHEA
     Special Assistant United States Attorney
     Social Security Administration
     701 5th Avenue, Suite 2900 M/S 901
     Seattle, WA  98104-7075

        Attorneys for Defendant

MARSH, Judge:

**<u>INTRODUCTION</u>**

    Plaintiff, Robert A. Petty (Petty), brings this action for

judicial review of a final decision of the Commissioner of Social

1- OPINION AND ORDER

Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  This court has jurisdiction under 42 U.S.C. § 405(g).

Petty applied for benefits June 26, 2002, alleging he became disabled June 10, 1994, due to mental impairments.  Born in 1958, Petty was 45 years old at the time of the hearing, conducted by an Administrative Law Judge (ALJ) on November 21, 2003.  Petty testified that he has an eighth grade education and past work as a mechanic in the military, seasonal fruit farmer, and machine operator.

On February 27, 2004, the ALJ found Petty was not disabled within the meaning of the Act.  The Appeals Council denied Petty's request for review on April 24, 2006, making the ALJ's decision the Commissioner's final decision.  See 20 C.F.R. §§ 404.981, 416.1481, 422.210.

On appeal to this court, Petty alleges the ALJ erred by (1) ignoring and improperly rejecting physical and mental limitations identified by physicians; (2) improperly rejecting the opinion of a nurse practitioner; (3) improperly rejecting Petty's testimony; (4) improperly assessing Petty's residual functional capacity; (5) improperly finding that Petty remains capable of performing his past relevant work; (6) improperly finding that Petty can do

2- OPINION AND ORDER

other work in the national economy; and, (7) improperly failing
to establish a foundation for the vocational expert's testimony.

The Commissioner avers that his decision is supported by
substantial evidence, and should be affirmed.  The Commissioner
admits that the ALJ erred in his step four finding, but argues
that this error was harmless because the ALJ's alternative step
five finding was based on substantial evidence and was free of
legal error.

For the reasons that follow the Commissioner's decision is
AFFIRMED and this case is dismissed.

<u>**STANDARD OF REVIEW**</u>

The initial burden of proof rests on the claimant to
establish disability.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th
Cir. 1995).  To meet this burden, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Commissioner bears the burden of developing the record.
<u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the
findings are supported by substantial evidence in the record.  42
U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.

1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## <u>DISABILITY ANALYSIS</u>

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520, 416.920. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one, the ALJ found that Petty's 10 year illegal business of manufacturing methamphetamine would likely be considered substantial gainful activity (SGA), since even a

criminal enterprises that meets the threshold criteria can constitute SGA.  <u>See</u> <u>Corrao v. Shalala</u>, 20 F.3d 943 (9th Cir. 1994); <u>see also</u> 20 C.F.R. §§ 404.1572(b), 416.972(b).  However, the ALJ proceeded through the remaining steps of the sequential evaluation, and therefore did not base his disability determination on a finding of SGA.  <u>See</u> 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found Petty had the following severe impairments: depression, possible anxiety or posttraumatic stress disorder, antisocial personality disorder, history of substance abuse (reportedly in remission), and borderline intellectual functioning.  <u>See</u> 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the ALJ found Petty's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability.  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Petty had the residual functional capacity (RFC) to perform a modified range of light work.  His work activity was limited by a prohibition on bending, and moderate limitations in understanding, carrying out and remembering detailed instructions, interacting with others without being distracted, and interacting appropriately with the

public.  <u>See</u> 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four, the ALJ found Petty remained capable of performing his past job as a machine operator, even though it is classified as medium exertion work.  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Since I agree with the Commissioner that any error caused by this inapposite finding was harmless, because the ALJ also made a legally sound finding of non-disability at step five, I need not address Petty's argument that the step four finding resulted in reversible error.

At step five the ALJ found Petty was able to do other work, existing in significant numbers in the national economy, such as bagger of produce, assembler of medical supplies, and cleaner or polisher.  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(40(v), 416.920(g).  Accordingly, the ALJ found that Petty was not disabled during the period under review.

<u>**DISCUSSION**</u>

The principal issue in this case is whether the ALJ properly assessed Petty's limitations and attendant residual functional capacity (RFC), before determining that he remains capable of working, and therefore, is not disabled.

A claimant's RFC is an assessment of what he can still do despite his limitations.  SSR 96-8p.  RFC is used at step four of

6- OPINION AND ORDER

the sequential evaluation to determine whether a claimant is able to do his past relevant work, and at step five to determine whether he is able to do other work, considering his age, education, and work experience.

The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which his medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his capacity to do work.  Id.

According, I will review the testimonial and medical evidence systematically, and address Petty's claims in the order they arise under the sequential evaluation.

**I.    The ALJ's rejection of Petty's testimony was based on clear and convincing reasons, and substantial evidence.**

The ALJ made the uncontroverted finding that Petty is an unreliable witness.  This finding was based on a host of acceptable testimonial evaluation factors, such as pervasive drug abuse, prior inconsistent statements, failure to seek treatment or follow a prescribed course of treatment, a lack of supporting objective medical evidence, and medical evidence that discounts the severity of the symptoms reported, and inconsistency between the degree of disability alleged and activities of daily living.

See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).
I will discuss a few of these findings in detail.

First, the ALJ found that long after Petty's alleged onset
of disability in 1994, he was a methamphetamine addict.  Petty
himself admitted to a drug treatment center that he made his
living for at least 10 years, including after his alleged
disability onset date, by running a large-quantity
methamphetamine manufacturing business.

Second, the ALJ discounted Petty's reports of multiple
disabling impairments, in part because Petty did not submit any
medical evidence pre-dating March 1, 2002, even though he
allegedly became disabled more than eight years prior.  Further,
the evidence he did submit did not support the degree of symptoms
he alleged, and demonstrated considerable gaps in medical care.
It shows that he was diagnosed with gastroesophageal reflux
disease (GERD), but that this condition resolved with medication.
The record also indicates that although Petty has Hepatitis C, he
does not have any symptoms associated with this condition.  As
discussed further below, though Petty was diagnosed with
depression and a possible anxiety disorder or posttraumatic
stress disorder, there is ample evidence that he is far more
sociable than he claims to be, that he has not pursued a
consistent course of treatment for this condition, and that in

8- OPINION AND ORDER

any event, this condition was much improved after just six months of sobriety.

Third, the ALJ rejected Petty's testimony because he issued inconsistent reports about his involvement with drugs. For example, Petty admitted to the counseling center that he used and manufactured methamphetamine, but then denied to the ALJ that he ever manufactured it. Petty claimed he could not lie down due to his GERD, yet he stated that he lies down 80 percent of the day. Reports indicate that Petty was involved in selling products online in an internet "scam," which clearly involved computer use, yet he claimed he was fired from his job at an adult bookstore because he couldn't figure out how to use the computer.

Fourth, even after Petty discontinued using illicit drugs, he admitted that he helps himself to his family members' prescriptions for anti-depressants, sleeping pills, and pain medications. He described his family's residence, where he resided at the time of the hearing, as a veritable "pharmacy," because his mother is depressed, his father is an alcoholic, and his sister is a registered nurse.

In summary, the ALJ's rejection of Petty's subjective complaints was for clear and convincing reasons, and based on substantial evidence. See Smolen v. Chater, 80 F.3d 1273, 1284

(9th Cir. 1996); see also Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999).

**II.  The ALJ's rejection of lay witness testimony was based on germane reasons, and substantial evidence.**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence which the ALJ must take into account, "unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'"  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

However, testimony about the causes of a claimant's medical problems, such as that the claimant has a serious mental impairment as the result of a stroke, is beyond the competence of a lay witness and therefore does not constitute competent evidence.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984); cf. Nguyen,100 F.3d at 1467 (distinguishing lay witness testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses).

**A.  Nurse Practitioner**

According to Petty, the ALJ improperly rejected the March 1, 2002 assessment of a nurse practitioner at the counseling center where Petty attended substance abuse counseling pursuant to a

court order.  That nurse assigned Petty a Global Assessment of
Functioning (GAF) score of 40.[1]  The ALJ expressly stated that
this assessment was rejected because a nurse practitioner is not
a reliable medical source, as defined by the regulations.  See 20
C.F.R. §§ 404.1513, 416.913.  This is a correct statement of the
law, under which a nurse's opinion is entitled to the same weight
as a lay witness opinion.  Id.

     Petty would like the court to overlook the six sentences
between the ALJ stating the nurse's finding and stating that she
was not an acceptable medical source, to find that the latter is
not a legally sufficient reason for failing to consider the
nurse's GAF assessment.  However, it is in those six sentences
that the ALJ did consider the GAF assessment, and gave germane
reasons for discrediting it.  He stated that a GAF of 40
"signifies a loss of touch with reality and possibly need [sic]
for hospitalization," yet "even on no medication for any mental
condition, [Petty] was cooperative and had appropriate thought
content."  Further, the ALJ found Petty didn't have any
"perceptual problems and was oriented times three...the nurse
estimated his intelligence as average...[and he] had a fund of
information that was adequate."

---

[1] A GAF score is only an estimate of a claimant's overall
level of functioning.  See DSM-IV 30 (4th ed. 1994).  It cannot
serve as a substitute for the required objective medical evidence
and work-related functional assessments needed to establish
disability under the Act.  See 20 C.F.R. §§ 404.1505, 416.905.

I, therefore, reasonably infer that the ALJ rejected the nurse's GAF assessment because it was internally inconsistent, not simply because she was an unacceptable medical source.  See Magallanes v. Bowen, 881 F. 2d 747, 755 (9th Cir. 1989)(stating the court may draw specific and legitimate inferences from the ALJ's decision).

**B.    Petty's Sister and Mother**

Petty claims the ALJ was required by law to provide specific and legitimate reasons to reject his sister and mother's testimony, and that he failed to do so.  He is wrong on both marks.

As stated above, the ALJ is only required to provide germane reasons for rejecting lay witness testimony.  He did so in this instance, where he stated that Petty's sister and mother were unreliable because Petty presented himself to them as disabled, because they enabled him to misuse prescription drugs by allowing him to consume their personal prescriptions, and because there is evidence in the record of malingering and drug abuse throughout Petty's family.  These germane reasons are supported by substantial evidence in the record.  Accordingly, I do not find any merit to this claim.

///

///

///

12- OPINION AND ORDER

**III. The ALJ properly assessed the medical evidence.**

The standards employed by the Commissioner when evaluating medical evidence in disability cases are found at 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The Commissioner weighs the opinion of a treating physician by considering the following factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree of supporting explanations and evidence, (4) consistency with the record as a whole, (5) whether the physician specializes in the medical issue about which he opines, and (6) other evidence such as whether the physician is familiar with the claimant's case record.  <u>Id</u>.

The Commissioner evaluates the opinion of a non-treating, examining physician and/or psychologist based on (1) medical specialty and expertise with the Social Security rules, (2) supporting evidence in the case record, (3) supporting explanations provided by the physician or psychologist, and (4) any other relevant factors.  20 C.F.R. §§ 404.1527(f), 416.927(f).

To reject the uncontroverted opinion of a treating physician, the ALJ must present clear and convincing reasons for doing so.  <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989).  To reject the opinion of a treating physician that conflicts with another physician's opinion contained in the

record, the ALJ must give specific and legitimate reasons based on substantial evidence.  <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

Finally, the ALJ may not ignore the findings of fact of non-examining state agency psychological consultants.  Instead, the ALJ must treat such findings as expert opinion evidence, and explain the weight given them.  Social Security Ruling (SSR) 96-6p.

### A.  Dr. Hadden

According to Petty, the ALJ improperly rejected and/or ignored the opinion of Scott Hadden, M.D., that Petty could be expected to be absent from work three times per month, and that he had not been able to work for the preceding three years. These "opinions" were presented to the ALJ in the form of a check-the-box form prepared by Petty's attorney, which Dr. Hadden filled out at the attorney's request in September 2003.  Dr. Hadden indicated on the form that his contact with Petty had been infrequent, and only for the past year and a half.  Dr. Hadden also indicated that there were no medical findings to substantiate any of Petty's claims, and that he based his answers on the form on Petty's subjective reports.  For these reasons, and based on the preceding credibility findings, the ALJ rejected the check-off assessment.  This was clear and convincing reasoning, based on substantial evidence.


14- OPINION AND ORDER

**B.   Dr. Sweet**

Petty claims the ALJ improperly rejected the opinions of examining psychologist David Sweet, Ph.D., who performed a one-time psychological examination and battery of testing on Petty in July 2002.  Dr. Sweet diagnosed Petty with "Major Depression, Recurrent, Moderate [rule out] Alcohol or Drug Dependance," as well as Borderline Intellectual Functioning.  He explained that Petty's alcohol and drug use compounded his depression.  Dr. Sweet stated that it "is not clear how [Petty] has supported himself since 1994 and he has no confidence at all that he could support himself at any time in the future."  Dr. Sweet also opined that "[Petty] does not appear to be capable of maintaining employment, but one would hope that with treatment he could become gainfully employed in the future."

The ALJ rejected these opinions, though he credited other limitations assessed by Dr. Sweet.  The ALJ reasoned that Dr. Sweet "arrived at his conclusions based primarily on the claimant's reports, which are not reliable" and that Dr. Sweet "had no review of [sic] the evidence of record establishing far greater vocational, concentration and social capacities for the claimant."  The ALJ specifically noted that Dr. Sweet was not aware that Petty has been supporting himself through high-quantity methamphetamine manufacturing, or that Petty was not nearly as socially isolated as he claimed.  I find the ALJ's

15- OPINION AND ORDER

reasons to be clear and convincing, and based on substantial evidence.

### C.    State Agency Psychologists

According to Petty, the ALJ improperly ignored the opinions of non-examining state agency psychologist Dick Wimmers, Ph.D., and Dorothy Anderson, Ph.D. (whom Petty refers to as physicians). Both psychologists filled out mental health functional capacity assessments after reviewing Petty's record up to that date.  They checked the box on the assessment form for "moderate" difficulty maintaining concentration, persistence or pace."  Petty also contends the ALJ ignored Dr. Wimmers' handwritten note that Petty "should not be expected to work with general [sic] public."

Petty believes these limitations were ignored because the ALJ only assessed Petty with a "moderate" limitation from interacting with the public, and did not specifically find a limitation in maintaining concentration, persistence and pace. Though the ALJ did not mention them by name, he specifically referenced their assessments, stating:

> State agency psychologists allowed for all these limitations
> by endorsing that the claimant due to combined mental
> impairments was moderately limited in understanding,
> carrying out and remembering detailed instructions,
> interacting with others without being distracted by them and
> interacting appropriately with the public.

Thus, contrary to Petty's contention, the ALJ did not improperly ignore these non-examining psychologists' findings in contravention of SSR 96-6p. By fully crediting the above findings he properly addressed the weight he accorded these opinions. Though the ALJ did not specifically comment on the finding of a moderate limitation maintaining concentration, persistence and pace, I reasonably infer that the ALJ rejected it, because he rejected a similar finding made by Dr. Sweet, and credited the contrary finding of treating physician Dr. Hadden, whose opinion was entitled to greater weight than these non-treating and non-examining physicians. Thus, I find the ALJ properly accounted for the non-examining state psychologists' check-box findings.

In summary, I find the ALJ properly credited the work-related functional limitations supported by substantial evidence, properly rejected those that were not, and therefore did not err in his assessment of Petty's RFC.

I further find that the ALJ properly applied his RFC assessment to find, at step five, that Petty could perform other work existing in significant numbers in the national economy. See Andrews, 52 F.3d at 1043. Petty's argument to the contrary is unpersuasive. He contends that the jobs identified by the vocational expert exceed his intellectual abilities, yet the ALJ

17- OPINION AND ORDER

did not credit the level of intellectual limitation on which this argument is premised.

Finally, there isn't any merit to plaintiff's counsel's argument that the expert witness rules from <u>Daubert v. Merrel Down Pharmaceutical, Inc.</u>, 509 U.S. 579 (1993) or <u>Kumho Tire Co. Ltd. v. Patrick Carmichael</u>, 526 U.S. 137 (1999), apply to the testimony of vocational experts.  In fact, the Ninth Circuit has previously rejected this very same argument from plaintiff's counsel in <u>Bayliss v. Barnhart</u>, 427 F.3d 1211 (9th Cir. 2005).

## <u>CONCLUSION</u>

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _13 day of June, 2007.

<u>  /s/  Malcolm F. Marsh      </u>
Malcolm F. Marsh
United States District Judge